IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY KEATLEY, an individual; VIRGIL RASK, an individual; and MATTHEW LINDLEY, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a corporation;<br><br>Defendant. | 8:21CV455<br><br>MEMORANDUM AND ORDER |

  This matter comes before the Court on Defendant's Motion for Protective Order (Filing No. 61). Defendant moves for a protective order under Fed.R.Civ.P. 26(c)(1) to prevent Plaintiffs from proceeding with the deposition of Lance M. Fritz, former Chairman, President and Chief Executive Officer of Union Pacific Railroad, pursuant to the "apex deposition" rule.

  This case involves flash flood washout resulting in a train derailment in which the Plaintiffs allege they were injured and brought suit under the Federal Employers' Liability Act, 45 U.S.C. § 51. Shortly after the derailment, Mr. Fritz hand-wrote notes to Plaintiff Larry Keatley and Plaintiff Virgil Rask generally expressing relief at their safety and pride in their actions. (Filing No. 63, at pp. 7-8). A year later, Plaintiff Matthew Lindley requested a hardship transfer due to his emotional difficulties operating on the line where the washout occurred, to which Mr. Fritz responded that he would "look into it and see what can be done." (Filing No. 63 at pg. 10). Based on the evidence

produced by both parties, this was the extent of the interactions between the Plaintiffs and Mr. Fritz. In August 2024, and after completing extensive discovery, Plaintiffs requested the deposition of Mr. Fritz, which prompted Defendant to file this Motion. Defendant argues that Plaintiff has not articulated a legitimate basis to take Mr. Fritz's deposition, that Mr. Fritz has no personal, unique or specialized information related to the underlying events or Union Pacific's defenses, and that the information that Plaintiff seeks can be obtained through other, less burdensome means. Plaintiff relies primarily on the argument that Mr. Fritz is the former CEO of Union Pacific and should thus be precluded for asserting an "apex doctrine" defense.

Generally, the apex deposition doctrine "requires a party seeking to depose a high-level corporate executive to demonstrate (1) that the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information have been exhausted." *Wetch v. Crum & Forster Commercial Ins.*, No. 5:17-CV-05033-JLV, 2019 WL 283654, at *2 (D.S.D. Jan. 22, 2019) (citing *Gladue v. Saint Francis Medical Center*, 2014 WL 7205153 *1 (E.D. Mo. Dec. 17, 2014)). This rule is "aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head--the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009). Nevertheless, "A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts, and it is difficult to persuade a court to do so." *Raml v. Creighton Univ.*, No. 8:08CV419, 2009 WL 3335929, at *2 (D. Neb. Oct. 15, 2009) (Gossett, M.J.) (citing *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001)).

As an initial matter, Plaintiffs rely heavily on the fact that Mr. Fritz is the former CEO of Union Pacific, and based on that alone, the apex deposition doctrine should not extend to him at

all. The Court disagrees. Although the Eighth Circuit has yet to explicitly rule on this issue, many courts have applied the apex deposition doctrine to former corporate executives. *See, e.g., Shao v. Allstate Ins. Co.*, No. 1:23CV809 (RDA/WEF), 2024 WL 1014172, at *1 (E.D. Va. Feb. 5, 2024)(applying apex doctrine to former company president and former regional finance leader); *Cellustar Corp. v. Sprint Sols., Inc.*, No. CV 19-01559 (GMM), 2024 WL 418140, at *4 (D.P.R. Feb. 5, 2024)(former president and CEO); *Harapeti v. CBS Television Stations Inc.*, No. CV2115675JXNLDW, 2021 WL 8316391, at *2 (D.N.J. Dec. 1, 2021)(former president); *Harapeti v. CBS Television Stations Inc.*, No. 21 MISC. 680, 2021 WL 3932424, at *2 S.D.N.Y. Sept. 2, 2021(applies to former executives); *Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-CV-744, 2021 WL 2478473, at *2 (M.D. Pa. June 17, 2021)(applying apex doctrine to former CEOs); *Davis v. Pinterest, Inc.*, No. 19CV07650HSGTSH, 2021 WL 11117688, at *1 (N.D. Cal. May 27, 2021)(stating that deposition notices to former high-level executives "look like the classic case of what the apex doctrine is designed to prevent ...."); *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686948, at *3 (S.D. Fla. Apr. 7, 2021)(deposition of former CEO was subject to the apex doctrine); *Office Depot, Inc. v. Elementum Ltd.*, Civ. A. No. 19-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020) (former members of board of directors); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-CV-0698 CAB (NLS), 2018 WL 692259, at *7 (S.D. Cal. Feb. 2, 2018)("... the protections of the apex doctrine continue to apply to [former company president] despite his recent change in employment."); *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2, 2010 U.S. Dist. LEXIS 29344 (D. Conn. Mar. 26, 2010)(former executives); *see also Vital Proteins, LLC v. Ancient Brands, LLC*, No. 1:22-CV-02265, 2023 WL 5671857, at *4 (N.D. Ill. Sept. 1, 2023)(noting that many courts have held that the doctrine is applicable to former executives and officials."). On the notion that Mr. Fritz is precluded from asserting the "apex

deposition" doctrine simply because he retired from his duties and is thus a *former* executive, that argument must fail. Therefore, he is entitled to the extended analysis of whether he can claim the doctrine's bar to his deposition on the merits of the doctrine itself.

The parties have undertaken extensive discovery in this case, including taking approximately fifteen (15) depositions. It appears those depositions included the dispatcher working at the time of the derailment, the Director of Track Maintenance on duty at the time, and the Vice President of Engineering and the Senior Director of Operations Support (Filing. No. 62 at pg. 11), all of whom likely possessed the same types of information Plaintiffs seeks from Mr. Fritz. See *City of Farmington Hills Employee Ret. Sys. v. Wells Fargo Bank, N.A.*, No. CV 10-4372 (DWF/JJG), 2012 WL 13048263, at *3 (D. Minn. Sept. 17, 2012)("The Court is first concerned with the propriety of deposing a high-level corporate official, which requires the Court to determine whether the official has unique knowledge that is not available from other, less burdensome sources.") Recently, the Nebraska District Court upheld the use of this doctrine in two similar instances. See *Dawkins v. Barnhart Crane & Rigging Co.*, No. 8:18-cv-534, 2020 U.S.Dist. LEXIS 55461)(D. Neb. Mar. 31, 2020)(unpublished) and *Benson v. City of Lincoln,* No. 4:18-cv-3127, 2023 U.S.Dist. LEXIS 153976 (D.Neb. Aug. 31, 2023)(unpublished)(extending the apex doctrine to trial testimony). In each of those cases, the court was not persuaded that the CEO had unique or special knowledge regarding any claim or defense. Here, Plaintiffs argue Mr. Fritz was notified of the derailment that injured Plaintiffs and knew enough about the derailment to offer them the handwritten notes. They further broadly argue that Mr. Fritz would likely take an interest in washout risks and derailments generally and he should be deposed for that reason. (Filing No. 65 at pg. 10). Beyond those generalized statements, Plaintiffs do not indicate specifically what

additional information they seek from Mr. Fritz's deposition that cannot be attained by other, less burdensome means, including those depositions that have already taken place.

After consideration of the parties' submissions and arguments, the Court finds good cause and reason exists for Defendant's requested protective order. The Court is not persuaded that Mr. Fritz possesses any unique or special knowledge related to the allegations involved in the Complaint. Beyond sending personal notes to the Plaintiffs expressing gratitude for their measures, Mr. Fritz testified that he had not personally met the Plaintiffs, had any discussion with them related to the derailment, participated in the investigation, or was otherwise informed of the outcome of the investigation. He further stated that any information that did receive about the derailment was passed on to him second hand and limited to the information told to him by others. ([Filing No. 63] at pgs. 4-6). Accordingly, the Court agrees with the Defendant that the Plaintiff has not shown the need to take Mr. Fritz's "apex" deposition and will grant Defendant's Motion for Protective Order.

IT IS ORDERED that the Defendant's request for a protective order, ([Filing No. 61]), is granted.

Dated this 27th day of November, 2024.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge