IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY KEATLEY, an individual; VIRGIL RASK, an individual; and MATTHEW LINDLEY, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a corporation;<br><br>Defendant. | 8:21CV455<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendant's Motion for Summary Judgment (Filing No. 99). For the reasons explained below, the motion will be denied.

### STATEMENT OF FACTS

This case arises from a train derailment that occurred on July 15, 2021. (Filing No. 41.) That day, Plaintiffs Larry Keatley ("Keatley"), Wirgil Rask ("Rask") and Matthew Lindley ("Lindley") (collectively, "Plaintiffs") were operating a train on the Caliente Subdivision traveling from Las Vegas, Nevada to Milford, Utah as Defendant's employees. (Filing No. 102-1; Filing No. 102-2; Filing No. 102-3.) Keatley was employed as a locomotive engineer, and Rask and Lindley were employed as train conductors. (Filing No. 41.)

At 8:39 P.M. MDT on the date of the derailment, the National Weather Service ("NWS") issued a flash flood warning for the area where the train was operating, including Lund, Utah. (Filing No. 102-14 at 9.) At 9:59 P.M. MDT, the NWS issued a "Flash Flood Statement," indicating that the NWS was issuing a "Flash Flood Warning" for Southwestern Beaver County in

Southern Utah and Northwester Iron County in southern Utah. (Filing No. 106-3 at 24.) The warning stated the impact was "[l]ife threatening flash flooding of creeks and streams, urban areas, highways, streets and underpasses." (Filing No. 106-3 at 24.) The warning further specified, "Some locations that will experience flash flooding include. . . Lund." (Filing No. 106-3 at 24.) (Ellipses in original.)

Then, at approximately 11:00:43 P.M. CDT, the train derailed in Lund, Utah because the track on which the train was traveling had been washed out by a flash flood.[1] (Filing No. 102-4 at 10; Filing No. 41.) The train crew did not contact Defendant prior to the derailment to notify dispatchers about the weather or track conditions. (Filing No. 102-6.)

At the time of the derailment, Defendant was contracted with AccuWeather Enterprise Solutions Inc. ("AccuWeather") for weather alerts and warnings. (Filing No. 102-11 at 4; Filing No. 106-8; Filing No. 41.) Defendant has contracted with AccuWeather for around thirty years. (Filing No. 102-11 at 4.) Under Defendant and AccuWeather's contract, AccuWeather provides Defendant with milepost-specific storm warnings of severe weather likely to impact Defendant's railroad tracks. (Filing No. 106-8 at 10; Filing No. 102-11 at 10.) AccuWeather's storm warnings identify the applicable subdivision, mile posts, and other information that assists train dispatchers in distilling information and conveying it to train crews. (Filing No. 102-6.) NWS alerts do not provide this information—they do not explicitly state which subdivision and mile posts are affected. (Filing No. 102-13 at 3.) Under the contract, AccuWeather was also to provide twice daily "Scheduled Information," including Hazardous Weather Maps and Hazardous Weather Summaries, which indicate anticipated hazardous weather conditions, including "[h]eavy rain that will lead to flash flooding." (Filing No. 106-8 at 9.) Defendant's Network Superintendent at the Dispatch Center receives the Hazardous Weather Maps and Hazardous Weather Summaries from AccuWeather. (Filing No. 111.)

When Defendant receives AccuWeather flash flood alerts for a specific milepost range, Defendant forwards the message to the dispatcher and corridor manager for that range. (Filing

---

[1] Defendant's railroad tracks have been around the washout since 1898-1899. (Filing No. 102-9; Filing No. 102-10.) Witnesses in this case are not aware of any prior flood events at that location that washed out the tracks or caused a derailment. (Filing No. 102-5; Filing No. 102-6; Filing No. 102-11; Filing No. 102-17; Filing No. 102-20; Filing No. 102-21.)

No. 102-11 at 5.) The dispatcher then protects the location of that milepost, contacts trains within the limits of the flash flood warning, and instructs them to comply with safety procedures. (Filing No. 102-11 at 5.) Train crew members are not permitted to have personal electronic devices during their work shift and do not have the ability to monitor weather conditions on their own devices during their shift. (Filing No. 106-7 at 3-4; Filing No. 111 at 9.) Train crews rely on Defendant's Dispatch Center to have the "most up-to-date, accurate weather information available." (Filing No. 111; Filing No. 106-5 at 3-4.) On the date of derailment, AccuWeather did not provide Defendant with a milepost-specific flash flood warning for the location of the derailment for the dispatcher to forward onto the crew.[2] (Filing No. 102-11 at 6.)

However, according to Plaintiffs, AccuWeather communicated Scheduled Information to Defendant on July 13, 2021 at 2:00 A.M. CT, July 14, 2021 at 2:00 A.M. CT, and July 15, 2021 at 2:00 A.M. (Filing No. 106-11 at 8-12.) This Scheduled Information included Hazardous Weather Maps and Summaries which indicated that storms and flash flooding would affect parts of Southern Utah. (Filing No. 106-11 at 8-12.) Specifically, the Hazardous Weather Maps denoted anticipated storms in Utah with rain droplet illustrations. (Filing No. 106-11 at 8-12.) On July 15, 2021, at 2:00 A.M. CT, the Hazardous Weather Summary stated, "Scattered storms will develop this afternoon into this evening across the eastern Desert Southwest . . . Expect isolated gusts to 60 mph and local flash flooding. Scattered storms will persist into the overnight hours across eastern portions of the Desert Southwest." (Filing No. 106-11 at 10.) The Hazardous Weather Summary dated July 15, 2021, at 12:00 PM CT stated, "Scattered storms will develop this afternoon across the eastern Desert Southwest through the Texas and Oklahoma Panhandles . . . Expect isolated gusts to 60 mph and local flash flooding. Scattered storms will diminish later this evening." (Filing No. 106-11 at 11.) It further indicated, "Rain and storms will develop this afternoon in the Southern Mississippi Valley through eastern Texas and in portions of the interior Desert Southwest. Expect local flash flooding . . . [T]he threat in the interior Desert Southwest will continue into the overnight hours before diminishing." (Filing No. 106-11 at 11-12.) Defendant

---

[2] Plaintiffs' First Amended Complaint alleges that AccuWeather was under a contractual duty to provide Defendant with hazardous weather warnings. (Filing No. 41 at 4.) It further alleges that "Plaintiffs' injuries were due to the negligence of [AccuWeather] in failing to provide [Defendant] with a flash flood alert." (Filing No. 41 at 4.) AccuWeather was dismissed from this suit on October 12, 2023, for lack of subject matter jurisdiction. (Filing No. 51.)

disputes that it received this Scheduled Information because "Plaintiffs presented no evidence that [Defendant] received this specific information." (Filing No. 111 at 6.)

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quotation omitted).

## DISCUSSION

Plaintiffs put forth three theories of negligence to support their claim for recovery: (1) Defendant failed to warn Plaintiffs of imminent flooding to the location of derailment so Plaintiffs could take measures to avoid derailment; (2) Defendant knew or should have known the track was in an area subject to flooding and derailments and placed the track in that location; and (3) Defendant "failed to warn Plaintiffs that the track where derailment occurred was at risk for

flooding and derailment."[3] (Filing No. 41.) Defendant contends that summary judgment is warranted because none of these theories present a genuine issue of material fact regarding the elements of negligence, specifically duty, breach, and foreseeability.[4]  (Filing No. 101 at 3-4; Filing No. 112 at 1.)  The Court disagrees.

Plaintiffs assert a claim against Defendant under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*.  (Filing No. 41.)  FELA provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad.  45 U.S.C. § 51. While FELA should be "liberally construed," it is not a workers' compensation statute; the basis of liability is "negligence, not the fact that injuries occur." *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 543 (1994).  To successfully assert a FELA claim, plaintiffs must prove the customary common law elements of a negligence claim: duty, breach, causation, and foreseeability. *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 987 (8th Cir. 2020); *Crompton v. BNSF Ry. Co.,* 745 F.3d 292, 296 (7th Cir. 2014).

It is well established, however, that "the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990) (cited by *Cowden v. BNSF Ry. Co.,* 690 F.3d 884, 889 (8th Cir. 2012)).  Compared to tort litigation at common law, "'a relaxed standard of causation applies under FELA.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011); *Lancaster v. BNSF Ry. Co.*, 564 F.Supp.3d 823, 829 (D. Neb. Sep. 29, 2021).  "FELA's language on causation . . . 'is as

---

[3] In their brief, Plaintiffs put forth two additional theories of negligence.  In particular, Plaintiffs contend Defendant failed to ensure that the track drainage system was adequate to handle expected water flows in violation of 49 C.F.R. § 213.33, and that Defendant failed to inspect the track to ensure safety in violation of 49 C.F.R. § 213.239.  (Filing No. 107 at 10-12.)  In its reply brief, Defendant argues that these issues do not pertain to the live allegations in the operative complaint.  (Filing No. 112 at 12-13.)  The scope of the live allegations in the operative complaint is at issue in Defendant's Motion to Exclude Plaintiffs' Expert Alan Pagels and Limit Testimony of Plaintiffs' Expert Charles Culver (Filing No. 97).  Whether these theories are "live allegations" will not be addressed in this Order as the motion for summary judgment will be denied without consideration of these additional allegations.

[4] Defendant also argues that Plaintiffs' contributory negligence precludes recovery.  (Filing No. 101 at 15.)  However, FELA is a pure comparative negligence system. *Hawley v. Union Pac. R.R. Co.*, No. 8:22-CV-0270, 2023 WL 6538605, at *6 (D. Neb. Oct. 6, 2023) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1995)).  *See Chicago & N. W. Ry. Co. v. Rieger*, 326 F.2d 329, 335 (8th Cir. 1964) ("The Federal Employers' Liability Act is a comparative negligence act. Unless it can be said that the appellee's alleged negligence was as a matter of law the sole cause of the injury, then the court would have to inquire into the sufficiency of the damages.").  As discussed below, genuine issues of fact remain as to whether Defendant was negligent. Therefore, the evidence does not indicate that "Plaintiffs' negligence was the sole cause of the accident[,]" entitling Defendant to judgment as a matter of law, as Defendant contends.

broad as could be framed.'" *CSX Transp., Inc.*, 564 U.S. at 691 (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)).

Whether a case should proceed forward to a jury simply depends on "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc.*, 564 U.S. at 692 (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). "[T]he right of the jury to pass upon the question of fault and causality must be liberally viewed[,]" and the "jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions.'" *Lockard v. Mo. Pac. RR. Co.*, 894 F.2d 299, 304 (8th Cir. 1990) (quoting *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 149 (8th Cir. 1982)).

Plaintiffs allege that Defendant failed to warn them that flooding was imminent so that they could take measures to avoid the derailment. Defendant contends, however, that it satisfied its duty of care by establishing a reasonable method to obtain severe weather alerts. Specifically, Defendant argues that it owed no duty to warn Plaintiffs of the flash flood warnings because it contracted with AccuWeather to provide such warnings. Defendant points out that its method of receiving weather alerts and warnings is not only reasonable but has also been approved by the Federal Railroad Administration ("FRA").[5] Defendant posits that the NWS itself is not an appropriate alternative to AccuWeather because it does not map alerts to Defendant's track system like AccuWeather does, and Defendant would have to perform this service itself to discern which NWS alerts would impact its services. (Filing No. 101).

FELA imposes "a continuous duty on employers to provide a reasonably safe workplace." *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000); *McIntyre v. Dakota, Minn., & E. R.R. Corp.*, 3:20-CV-00042, 2021 WL 7081117, at *4 (S.D. Iowa Dec. 20, 2021). The

---

[5] The FRA recommends railroads enact a procedure that ensures train dispatchers receive timely warnings of any flash flood that could damage the track that either incorporates (1) "the means to receive" all NWS flood warnings for the area in which the track is located within 15 minutes of issuance, or (2) [a]n arrangement with a competent commercial weather service" that receives and reviews weather data from the NWS that relays warnings and weather information "specific to the situation and requirements of the railroad." Notice of Safety Advisory 97-1 - Damage to tracks, roadbed, and bridges resulting from uncontrolled flows of water and similar weather-related phenomena, 62 Fed. Reg. 171, 46793-46796; as amended by 62 Fed. Reg. 220, 61163. (Also available at Filing No. 102-15.) AccuWeather is used by other Class 1 railroads for weather alerts. (Filing No. 102-11 at 8.)

measure of duty in FELA actions is the degree of care that ordinary, reasonable people would use under similar circumstances, and "what these same persons would anticipate as resulting from a particular condition." *Ackley v. Chicago & N.W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987); *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992). Importantly, "[t]he duty of care is non-delegable, and it becomes more onerous as the risk to the employee increases." *Francisco*, 204 F.3d at 789 (citing *Ackley*, 820 F.2d at 267).

A railroad sued under FELA cannot "assume away" its nondelegable duty of care. *Ackley*, 820 F.2d at 268. In other words, under FELA, "while a railroad can be liable for its own negligence, it can also be liable based on a dangerous condition caused or created solely by the negligent acts of a third party." *Madden v. Antonov*, 966 F.Supp.2d 851, 857 (D. Neb. 2013) (collecting cases). *See also Lockard*, 894 F.2d at 303 (finding railroad liable under FELA where an employee fell on icy stairs at a lodging house owned by a third-party who the railroad contracted with to provide lodging for employees). A railroad can be held liable for a third party's negligence even without evidence that the railroad knew or should have known about the hazardous condition in the workplace created by the third party. *Dykes v. BNSF Ry. Co.*, 356 F.Supp.3d 1097, 1102 (W.D. Wash. 2018) (holding the railroad could not absolve itself of liability for a broken rail by contracting with a third party to maintain and inspect the tracks for such defects); *see Shenker v. Baltimore & O. R.R. Co.*, 374 U.S. 1, 6, 10 (1963) (finding that lack of control and supervision over the third party and lack of notice of the defect in the third party's railcar did not absolve railroad of liability for harm from third-party's defective railcar).

Here, Defendant cannot escape liability by relying on AccuWeather's alleged failure to provide Defendant with its contracted storm warnings. Although AccuWeather was hired to provide this service, Defendant still had a non-delegable duty to provide its employees with a safe place to work. Defendant argues it cannot be held liable for AccuWeather's failure to perform because Plaintiffs have not attempted to show that AccuWeather was negligent. However, Plaintiffs' First Amended Complaint alleges that AccuWeather was under a contractual duty to provide Defendant with hazardous weather warnings, and that AccuWeather negligently failed to provide Defendant with a flash flood alert. (Filing No. 41). The parties do not dispute that AccuWeather did not provide this alert. AccuWeather does not need to be a party of the lawsuit for liability to attach to Defendant, but Plaintiffs will need to provide evidence of AccuWeather's

7

negligence to ultimately prevail. *See Empey v. Grand Truck W. R.R. Co.*, 710 F.Supp. 653, 662-63 (E.D. Mich. 1987) (holding a third party could be an agent of the railroad, and its negligence could be imputed onto the railroad). *But see Sapp v. CSX Transp., Inc.*, 478 Fed.Appx. 961, 970 (6th Cir. 2012) (holding a third party's negligence could not be imputed onto the defendant when the plaintiff had "made no allegation, let alone provided any evidence" of the third party's negligence).

Defendant also argues summary judgment is warranted because Plaintiffs cannot establish that Defendant was "on notice of something that should have caused it to anticipate a risk of mishap or injury—*i.e.*, reasonable foreseeability of harm." (Filing No. 101.) Defendant is correct that an employer's duty of care in a FELA action "turns in a general sense on the reasonable foreseeability of harm." *Ackley*, 820 F.2d at 267 (citing *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 117 (1963)). If a railroad has no reasonable ground to anticipate a potentially hazardous condition, it is not required to correct the condition. *CSX Transp., Inc.*, 564 U.S. at 703 (quoting *Gallick*, 372 U.S. at 118, 118 n.7) (quotations omitted). "Whether a railroad has reasonable grounds to foresee that a particular condition might result in an injury depends on the evidence of each particular case." *Burckhard v. BNSF Ry. Co.*, 837 F.3d 848, 854 (8th Cir. 2016) (citing *CSX Transp., Inc.*, 564 U.S. at 702-03).

To establish foreseeability under FELA, "a plaintiff must show that the employer had actual or constructive notice of those harmful circumstances." *Holbrook v. Norfolk So. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005). The question of whether a defendant had actual or constructive notice of harmful circumstances in the workplace is typically a question of fact for the jury. *E.g., Mele v. Metro. Transp. Auth'y*, No. 04Civ.03661(LTS)(THK), 2006 WL 2255080, at *3 (S.D. N.Y. Aug. 4, 2006) ("Whether the [defendant] had actual or constructive notice of the hazardous wet condition presents an issue of fact, and 'as with all factual issues under FELA, 'the right of the jury to pass on this issue must be liberally construed.'") (citing *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989)); *Thomas v. Reading, Blue Mountain, N. R.R. Co.*, No. Civ.A. 01-5834, 2003 WL 22133831, at *2 (E.D. Pa. Sep. 13, 2003) ("The employee must show that the employer had actual or constructive knowledge of the hazardous condition, and that issue is determined by the jury."). However, a trial court may withdraw such an issue from the jury "in those extremely rare instances where there is a zero probability either of employer negligence or

that any such negligence contributed to the injury of an employee." *See Thomas*, 2003 WL 22133831, at *2.

In this case, although Defendant allegedly did not receive a storm warning from AccuWeather, there is a genuine issue of fact as to whether Defendant received Hazardous Weather Maps and Summaries from AccuWeather that forecasted flash flooding in the area.[6] Plaintiffs assert that Defendant received this information but failed to provide these forecasts to dispatching and track maintenance personnel. While transient weather conditions alone are insufficient to create liability under FELA (*e.g., Borum v. Grand Trunk W. R. R., Inc.*, 659 F.Supp.2d 853, 857 (E.D. Mich. 2009)), railroads have a duty to warn employees of dangerous conditions, such as weather, when they have notice of such a hazard. *Cf. Williams v. Grand Trunk W. R.R. Inc.*, 352 Fed. Appx. 13, 17 (6th Cir. 2009) ("A railroad's failure to cure specific dangerous conditions, including failures to remedy conditions created by winter weather, may constitute negligence."); *Kimbler v. Pittsburgh & L.E. R.R. Co.*, 331 F.2d 383, 385 (3rd Cir. 1964) (finding a railroad could be negligent for failing to take available "precautions, either in the form of 'advanced protection' or 'corrective action'" to neutralize the dangers of severe weather).

This case presents a close call, but it is not one of those "extremely rare instances where there is a *zero* probability either of employer negligence or that any such negligence contributed to the injury of an employee." *Thomas*, 2003 WL 22133831, at *2 (emphasis added). The Court finds a genuine issue of material fact exists as to whether Defendant was aware of the risk of flash flooding and then failed to take measures to minimize the risk of derailment or injury. A reasonable jury could potentially agree with Defendant that it did not receive this information, or that this information did not apprise Defendant of the flash flood risk to the location in Lund, Utah. However, based on the same evidence, a reasonable jury could also find Defendant breached its duty to warn Plaintiffs of the flash flood risk because it was allegedly apprised of potential flash flooding in Southern Utah, where Lund, Utah is located. Therefore, liberally construing the right

---

[6] Defendant contends that these maps and communications should not be considered because they are not authenticated and constitute hearsay. (Filing No. 112 at 6.) However, the standard for evidence at the summary judgment stage is not whether the evidence is admissible in its present form, but whether it could be presented at trial in an admissible form. *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Therefore, Defendant's objection to the Court's consideration of this evidence in ruling on the present motion is overruled.

9

of a jury to pass on this issue, genuine issues of material fact regarding Defendant's potential negligence remain, and those questions of fact must go to a jury.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Filing No. 99) is denied.

Dated this 29th day of December, 2025.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge