IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY KEATLEY, an individual; VIRGIL RASK, an individual; and MATTHEW LINDLEY, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a corporation;<br><br>Defendant. | 8:21CV455<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant Union Pacific Railroad Company's ("Defendant") Motion to Exclude Plaintiffs' Expert Alan Pagels and Limit Testimony of Plaintiffs' Expert Charles Culver (Filing No. 97). For the reasons stated below, the motion will be granted in part and denied in part.

**FACTUAL BACKGROUND**

This action arises from a train derailment in Lund, Utah on July 15, 2021, in which Plaintiffs Larry Keatley, Wirgil Rask, and Matthew Lindley (collectively, "Plaintiffs"), were operating the train as Defendant's employees. (Filing No. 41.) Plaintiffs assert a claim against Defendant under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., and allege the following in the Amended Complaint, filed June 1, 2023:

> Plaintiffs' injuries were due to the negligence of the Defendant UPR in failing to provide Plaintiffs with safe tools and equipment and a safe place to work, in one or more of the following particulars:
>
> a. Defendant UPR failed to warn Plaintiffs that flooding was imminent so that they could take measures to avoid the derailment;
> b. Defendant UPR placed the track in a location which it knew or should have known was subject to flooding and thus derailments; and
> c. Defendant UPR failed to warn Plaintiffs that the track where the derailment occurred was at risk for flooding and derailment.

1

(Filing No. 41.)

Plaintiffs asserted additional claims against AccuWeather Enterprise Solutions LLC as successor in interest to AccuWeather Enterprise Solutions Inc. ("AccuWeather"). (Filing No. 41 at 4.) Plaintiffs alleged that AccuWeather had a contractual duty to provide Defendant with hazardous weather warnings on July 15, 2021, and negligently failed to do so, resulting in Plaintiffs' injuries. (Filing No. 41 at 4.) On October 12, 2023, AccuWeather was dismissed as a defendant for a lack of subject matter jurisdiction. (Filing No. 51.)

On October 24, 2023, Plaintiffs filed a Motion to Revise Order Dismissing AccuWeather Under FRCP 45(b) and Motion for Leave to File Second Amended Complaint, which included additional allegations regarding citizenship that attempted to cure the jurisdictional defects identified by the Court. (Filing No. 52.) The proposed second amended complaint also contained additional allegations against Defendant, including:

d. Defendant UPR failed to provide Train Crew Plaintiffs with a reasonably safe place to work.
e. Defendant UPR failed to maintain adequate track drainage at the derailment location.
f. Defendant UPR failed to use reasonable care in monitoring weather conditions where Train Crew Plaintiffs' train was operating.
g. Defendant UPR failed to warn Train Crew Plaintiffs of flash flooding along their route.
h. Defendant UPR failed to slow or stop Train Crew Plaintiffs' train despite flash flood warnings from the National Weather Service.
i. Defendant UPR failed to perform a track inspection before sending Train Crew Plaintiffs' train through an area experiencing flash flooding.
j. Defendant UPR failed to comply with 49 C.F.R. § 213.239 – Special Inspections; 49 CFR § 213.33 – Drainage; 49 CFR § 213.103 – Ballast; FRA Safety Advisory 97-1; Chapter 8.9 (Special Inspections) of Union Pacific's Engineering Track Maintenance Field Handbook; Rocky Mountain Superintendent Bulletin No. 54; Union Pacific Train Dispatcher Rules 22.5 & 22.5.5.

(Filing No. 52-1.) (Formatting omitted.)

Plaintiffs also articulated these additional theories of negligence in an earlier response to Defendant's written discovery requests, which were served on Defendant in June of 2022. (Filing No. 104-2; Filing No. 104-3.)

On December 22, 2023, the Court denied Plaintiffs' Motion to Revise Order Dismissing AccuWeather Under FRCP 45(b) and Plaintiffs' Motion for Leave to File Second Amended Complaint. (Filing No. 55.) The Court declined to grant Plaintiffs leave to amend the complaint because (1) "Plaintiffs sought leave to amend after the deadline for amendment established by the Court's earlier scheduling order had passed[,]" and (2) Plaintiff did not show good cause to modify the scheduling order because there had been no change in the law, newly discovery facts, or other changed circumstance. (Filing No. 55 at 6-7.) Specifically, the Court cited that the only "changed circumstance" was the Court's grant of AccuWeather's Motion to Dismiss, which did not constitute good cause. (Filing No. 55 at 7.)

Defendant's present motion seeks to exclude the entire testimony of Plaintiffs' expert witness, Alan Pagels ("Mr. Pagels"). (Filing No. 97.) Mr. Pagels is a "railroad operations, maintenance of way, track, engineering, and safety expert." (Filing No. 98-1 at 4.) He is set to testify to "issues of liability and causation involved in the subject incident, including but not limited to track conditions where the subject incident occurred." (Filing No. 98-1 at 4.) Per Mr. Pagels, his opinion is based on "existing railroad rules, regulations, standards and practices." (Filing No. 98-2 at 2.)

In his expert report, Mr. Pagels opines:

(1) Defendant failed to comply with 49 C.F.R. § 213.33, the regulation prescribing appropriate drainage for roadbeds;
(2) Defendant was not in compliance with its engineering standards or industry standards regarding adequate drainage;
(3) Defendant did not comply with FRA Track Safety Standards and its own standards for conducting special inspections for severe weather, despite the weather alerts issued by the National Weather Service;

3

(4) Defendant had the "knowledge, expertise, and means to design, construct, and maintain track" in compliance with Defendant's engineering standards and the standards set forth in 49 C.F.R. § 213.1 *et seq.*; and

(5) Defendant is "responsible for determining where its crews operate trains and is responsible for ensuring its crews have a safe place to work." (Filing No. 98-2 at 24-28.)

Through the instant motion, Defendant also seeks to exclude the portion of Plaintiffs' expert witness Charles Culver's ("Mr. Culver") testimony that relates to his opinion on Defendant's failure to stop or slow the train.[1] (Filing No. 97.) Mr. Culver is an "expert in railroad operations, train handling, locomotive operations, locomotive event recorders, safety, management, policies, and procedures." (Filing No. 98-1 at 2.) Mr. Culver is set to testify to "issues of liability and causation involved in the subject incident, including but not limited to Defendant's policies and procedures concerning railroad locomotive operation." (Filing No. 98-1 at 2.) Per Mr. Culver, his opinion is based on the materials he reviewed and his "training, education and experience" in the field of railroad operations. (Filing No. 98-3 at 1.)

In his report, Mr. Culver opines:

(1) Plaintiffs were performing their duties according to railroad rules and "were not at fault in this incident[;]"
(2) The train crew was not warned of "conditions ahead" and had "no reason to anticipate the track conditions they would encounter[;]" and
(3) The train's configuration "increased the dangers associated with emergency braking under the conditions." (Filing No. 98-3 at 5-9.)

## DISCUSSION

Defendant moves to exclude the full proffered testimony of Mr. Pagels and the portion of Mr. Culver's testimony relating to his opinion on Defendant's failure to stop or slow the train. (Filing No. 97.) Defendant contends these opinions are not relevant because the disputed

---

[1] In its reply brief, Defendant represented that it "no longer seeks to exclude Culver's opinions regarding the train's makeup." (Filing No. 105 at 1.)

testimony does not relate to the "live allegations" in the operative complaint, and, therefore, would not assist a trier of fact in determining a fact in issue. (Filing No. 98.) The parties dispute the scope of the live allegations— meaning the claims actually asserted against Defendant— and what facts are at issue for the purposes of relevancy. (*See* Filing No. 98; Filing No. 103.)

Federal Rule of Evidence 702 and the holding in *Daubert* govern the admissibility of expert testimony and give the Court a gatekeeping responsibility to ensure that all expert evidence is relevant and reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)); *Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 660-61 (8th Cir. 2025). Rule 702 was amended in 2023 "'to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.'" *Sprafka*, 139 F.4th at 660 (quoting Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment). After that amendment, "courts continue to have a gatekeeping role to assure that evidence admitted in a case is both relevant and reliable." *Id.* (quoting *Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 790 (8th Cir. 2024)).

Expert testimony is relevant if it will assist the jury in understanding the evidence or determining a "fact in issue." Fed. R. Evid. 702. Expert testimony is also relevant if it relates to an affirmative defense raised by defendant. *See Iridex Corp. v. Synergetic, Inc.*, No. 4:05CV1916, 2006 WL 6869408, at *1 (E.D. Mo. Dec. 8, 2006). An expert's testimony does not need to directly relate to the ultimate issue that the trier of fact is to resolve; the testimony only needs to be relevant to evaluating a factual matter. *Smith v. BMW N. Am., Inc.,* 308 F.3d 913, 919 (8th Cir. 2002). However, the expert testimony must still be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1055 (8th Cir. 2000). Doubts as to "whether an expert's testimony will be useful [to the trier of fact] should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

Expert testimony is not relevant, however, if it does not relate to a claim in the case. *Gerling v. City of Hermann, Missouri*, No. 4:17-CV-02702 JAR, 2019 WL 7048972, at *4 (E.D. Mo. Dec. 20, 2019), *aff'd in part, rev'd in part, and remanded on other grounds*, 2 F.4th 737 (8th

5

Cir. 2021). A claim in the case is one that is pled in the operative complaint or relates to allegations in the operative complaint. *See Lillebo v. Zimmer*, No. 03-2919 (JRT/FLN), 2005 WL 388598, at *5 (D. Minn. Feb 16, 2005) (excluding expert testimony related to breach of a regulatory or statutory duty when negligence per se was not pled nor did the operative complaint contain "any facts indicating a claim of negligence per se").

The parties rely upon *O'Dea v. BNSF Railway Company*, 22CV3165, 2023 WL 6196848 (D. Neb. Sep. 22, 2023) to support their respective positions regarding the relevancy of the disputed testimony and whether Plaintiffs' additional allegations of negligence are contained in the claims in the operative complaint. (Filing No. 103; Filing No. 105.) In *O'Dea*, the FELA plaintiff pled in his complaint that the railroad-defendant "failed to provide a reasonably safe place to work, reasonably safe conditions for work, and reasonably safe tools, equipment, and appliances for work." *Id.*, at *2. The defendant moved to strike portions of the plaintiff's expert testimony that did not relate to the claims specifically alleged in the operative pleading. *Id.*, at *1. The plaintiff argued that Federal Rule of Civil Procedure 8(a)(2)[2] did not require him to allege a violation of a specific regulatory duty in the complaint, and the court agreed. *Id.*, at *2.

However, the court noted two issues that still prevented the plaintiff from offering the disputed portions of the expert testimony. The court noted that the federal rules "require specificity in responding to discovery, thereby providing notice, with specificity, of the alleged acts of negligence." *Id.* The plaintiff had failed to identify the theories supported by the disputed expert testimony in its responses to the defendant's discovery requests and did not raise the additional allegations of negligence until the plaintiff's deposition, after the deadline for written discovery had passed. *Id.* Then, after the deposition, the plaintiff moved for leave to amend the complaint to add the additional allegations, which the court denied. *Id.*

The court granted the defendant's motion to strike the portions of the expert testimony relating to the additional theories of negligence. *Id.*, at *3. The court reasoned that when a defendant serves early interrogatories to "define and clarify the parameters of the lawsuit at the outset, the notice pleading standards of Rule 8 do not grant an ongoing license to materially shift

---

[2] Fed. R. Civ. P. 8(a)(2) provides that pleadings that state a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

or expand the theories of negligence[.]" *Id.* Further, the court noted that allowing expert testimony on the additional theories of negligence "would not only render [the] court's order on the motion to amend meaningless," but it would also cause "undue burden" on the defendant by "materially and significantly changing the claim and legal issues, expanding the scope of the lawsuit, and requiring the court to reopen the discovery process." *Id.*

Plaintiffs rely on *O'Dea* to contend that their complaint's broad language and the Plaintiffs' early discovery responses, which identified the additional theories of negligence, make the disputed testimony relevant to the claims alleged in the operative complaint. (Filing No. 103.) The Court disagrees. While Plaintiffs correctly state the broad pleading standard under Rule 8, Plaintiffs limited the scope of their general allegation that Defendant failed to provide safe tools and a safe work environment by specifying three ways in which Defendant breached this duty, without language preserving the generality of their allegation (e.g., "including, but not limited to"). Therefore, the operative complaint failed to put Defendant on notice to defend itself against additional theories of negligence not enumerated in the complaint, and allowing additional theories of negligence would impose an undue burden on Defendant by expanding the theories of negligence. Additionally, allowing Plaintiffs to pursue these additional theories of negligence would render the Court's prior order denying Plaintiffs' motion to amend their complaint meaningless, as the denied amendment specifically added these theories. Therefore, Plaintiffs' proffered expert testimony is only relevant to the extent it relates to the three theories of negligence set forth in the operative complaint or any affirmative defenses raised by Defendant, including comparative negligence. (Filing No. 41; Filing No. 6 at 2.)

Therefore, Mr. Pagels' testimony is admissible to the extent that it relates to Plaintiffs' claims that Defendant negligently placed the track and failed to warn Plaintiffs as to the risk of flooding and derailment at the derailment track location. Mr. Pagels can testify to the general requirements for waterflow set forth by the FRA and whether the geographic location posed an unreasonable risk of flooding to the extent that such testimony relates to Plaintiffs' allegation that Defendant knew or should have known the track location was subject to flooding. Mr. Pagels' testimony regarding Defendant's failure to comply with FRA Track Safety Standards and Defendant's internal standards for conducting special inspections for severe weather is only admissible to the extent that it relates to Defendant's failure to warn of imminent flooding or the

7

risk of derailment.  Mr. Pagels may testify that Defendant is "responsible for determining where its crews operate trains and is responsible for ensuring its crews have a safe place to work" to the extent it relates to Plaintiffs' claim of negligent track placement or failure to warn.

However, Mr. Pagels may not testify to the specific requirements of 49 C.F.R. § 213.33 and Defendant's alleged failure to comply with such requirements, as negligence per se was not alleged in the operative complaint.  See *Lillebo*, 2005 WL 388598, at *5.  Similarly, Mr. Pagels may not testify to Defendant's alleged failure to maintain adequate track drainage, nor may Mr. Pagels opine as to Defendant's ability to design, construct, and maintain track in compliance with Defendant's internal engineering standards and the standards set forth in 49 C.F.R. § 213.1 *et seq*.  Mr. Pagels may not testify to Defendant's failure to conduct a special inspection as it relates to Plaintiffs' contentions that Defendant failed to slow or stop the train.

Mr. Culver's testimony, however, all appears to relate to Defendant's affirmative defense of Plaintiffs' comparative negligence and is therefore relevant.  Mr. Culver may testify to whether Plaintiffs performed their duties in compliance with railroad rules and whether they were warned as to the conditions ahead of them or had reason to anticipate track difficulties.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Exclude Plaintiffs' Expert Alan Pagels and Limit Testimony of Plaintiffs' Expert Charles Culver (Filing No. 97)) is granted in part, and denied in part.

2. Plaintiffs may present Mr. Pagels' testimony that relates to the three theories of negligence enumerated in the operative complaint (failure to warn of imminent flooding, negligent track placement, and failure to warn as to the risk of flooding and derailment at the derailment track location).

3. Mr. Pagels' testimony will be excluded to the extent that it relates to any theory of negligence not set forth in the operative complaint (Filing No. 41).  Specifically, Mr. Pagels may not testify to the specific requirements of in 49 C.F.R. § 213.1 *et seq.* and Defendant's alleged failure to comply with such requirements; Defendant's failure to

maintain adequate track drainage; and Defendant's ability to design, construct, and maintain track in compliance with Defendant's engineering standards.

4. Charles Culver's testimony will not be excluded.

Dated this 2nd day of January, 2026.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge